UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tina S., <br><br> Plaintiff, <br><br> v. <br><br> Leland Dudek, <br> Acting Commissioner of Social Security Administration, [1] <br><br> Defendant. | Case No. 23-cv-3603 (TNL) <br><br><br> **ORDER** |

Edward A. Wicklund, Olinsky Law Group, 250 South Clinton Street, Suite 210, Syracuse, New York 13202, and Jyotsna Asha Sharma, Disability Partners, PLLC, 2579 Hamline Avenue North, Suite C, Roseville, MN 55113 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415; and James D. Sides and Sophie Doroba, Special Assistant United States Attorneys, Social Security Administration, 6401 Security Boulevard, Baltimore, Maryland 21235 (for Defendant).

## I.    INTRODUCTION

Plaintiff Tina S. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] The Court has substituted Acting Commissioner Leland Dudek for Acting Commissioner Kilolo Kijakazi.  A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

1

Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules governing actions seeking judicial review of the Commissioner's decision, this action "is presented for decision by the parties' briefs." Fed. R. Civ. P. Supp. SS Rule 5. Plaintiff filed a motion for summary judgment, ECF No. 13, requesting the Court to reverse the Commissioner's decision and remand for further review. Defendant filed a brief in opposition, ECF No. 17.

For the reasons set forth below, the Court denies Plaintiff's motion, grants Defendant's request for relief, and affirms the Commissioner's decision.

## II.   BACKGROUND

In 2021, Plaintiff applied to the Social Security Administration for Supplemental Security Income.[2] Tr. 67. In her application, Plaintiff said she was disabled because of osteoarthritis of the spine, osteoarthritis of the wrist, osteoarthritis of the wrist, a herniated disc, chronic obstructive pulmonary disease (COPD), high blood pressure, high cholesterol, bipolar disorder, depression, and post-traumatic stress disorder (PTSD). *Id.* The Social Security Administration[3] denied Plaintiff's initial application, finding that she was not disabled. Tr. 77, 80. Plaintiff applied for reconsideration of her applications, Tr. 124–25, and the Social Security Administration again denied her claim. Tr. 107, 110.

---

[2] Plaintiff also applied for Social Security Disability Insurance. Tr. 62. Through the attorney representing her at the administrative hearing, Plaintiff dismissed her claim for disability insurance, leaving only her claim for Supplemental Security Income at issue. Tr. 40–41.

[3] A Minnesota state agency made the original disability determination on behalf of the Social Security Administration. *See* 20 C.F.R. § 416.1026 (providing funding to state agencies to make disability determinations on behalf of the Social Security Administration).

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). Tr. 132–33. At the administrative hearing, the ALJ heard testimony from Plaintiff and from a vocational expert. Tr. 42, 50. In making his decision, the ALJ reviewed the initial and reconsideration determinations of the Social Security Administration, including the medical opinion of Linda Berberoglu, Ph.D. Tr. 98–100, 104–05. The ALJ also considered extensive medical records in preparing his decision. Tr. 284–848. These included reports from Plaintiff's visits with a physician, Kelly Barnes, M.D. Tr. 717–27, 742–80.

After the hearing, the ALJ issued a decision denying Plaintiff's claim. Tr. 15–29. In his decision, the ALJ found that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. Tr. 20. He went on to find that Plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 416.967(b) with the following limitations: she can lift 20 pounds occasionally and 10 pounds frequently. She can carry 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours, stand for 6 hours, and walk for 6 hours. She can push/pull as much as she can lift/carry. She can handle items frequently with the right/dominant hand. She can stoop frequently. She can crawl frequently. She can never operate a motor vehicle. She can never work in humidity and wetness. She can work in dust, odors, fumes, and pulmonary irritants but indoor work must be well ventilated with HVAC controlled settings. She cannot perform indoor or outdoor work requiring direct exposure to concentrated sources of pulmonary irritants. She can never work in extreme cold. She can understand, carry out, and remember simple instructions and use judgment as necessary to complete simple, routine, and repetitive tasks. She can adapt to and manage changes in a routine work setting such as changes in processes and products that can be learned in a manner and time consistent with SVP-1 or SVP-2 work. She can respond appropriately to supervision, coworkers, and usual work situations but no complex teamwork or other social

3

> interaction requiring a code lower than 8 on the people scale of Appendix B to the Dictionary of Occupational Titles, 1991 revised edition.

Tr. 21. Based on this residual functional capacity, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. 28. To make this finding, the ALJ relied on the testimony from the vocational expert that Plaintiff could perform the requirements of a merchandise marker, a collator operator, or a router. Tr. 28–29, 54–55. As a result, the ALJ determined that Plaintiff was not disabled. Tr. 29.

Plaintiff requested that the Appeals Council review the decision of the ALJ, Tr. 241–42, and the Appeals Council denied her request for review. Tr. 1.

Plaintiff now seeks review by this Court.

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Pl.'s Br. at 1, ECF No. 14. Plaintiff specifically contends that the ALJ's formulation of Plaintiff's residual functional capacity is inconsistent with the ALJ's finding of Plaintiff's capacity for mental work, that the ALJ did not properly evaluate the opinion of Linda Beberoglu, and that the ALJ's formulation of Plaintiff's residual functional capacity is not based on substantial evidence. *Id.* The Court is not persuaded.

#### A. Standard of Review

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* at 103. "It means—and means only—such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, also*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Id.* Rather, reviewing courts reverse an ALJ's decision "only if it falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quotation omitted).

### B. Supplemental Security Income

Supplemental Security Income is available to low-income individuals who are older than 65, blind, or disabled. 20 C.F.R. § 416.202. An individual is considered to be disabled if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted . . . for a continuous period of not less than 12 months." *Id.* § 416.905(a). This standard is met when a severe physical or mental impairment renders the individual unable to do their previous work or "any other substantial gainful work that exists in the national economy." *Id.*

Disability is determined according to a five-step, sequential evaluation process. *Id.* § 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was

5

>  comparable to, a listed impairment; (4) she could perform past
> relevant work; and if not, (5) whether she could perform any
> other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 416.912(a).

Before the fourth step in the disability determination process, the ALJ assesses the claimant's residual functional capacity. *Id.* § 416.945(a)(5)(i). The residual functional capacity is the most work a claimant can do despite their limitations. *Id.* § 416.945(a)(1). The ALJ assesses a claimant's residual functional capacity "based on all of the relevant medical and other evidence." *Id.* § 416.945(a)(3). If a claimant has a severe impairment, but the impairment is not a listed impairment, the ALJ must "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining . . . residual functional capacity." *Id.* § 416.945(e). To make this determination on the total limiting effects of the claimant's impairments, the ALJ considers "all of the medical and nonmedical evidence." *Id.*

> **C. The ALJ's formulation of Plaintiff's residual functional capacity is consistent with moderate limitations in concentrating, persisting, and maintaining pace.**

Plaintiff argues that the ALJ did not incorporate limitations in concentrating, persisting, and maintaining pace into his formulation of Plaintiff's residual functional capacity. ECF No. 14 at 5. She cites caselaw that "limiting a claimant to unskilled work [in a residual functional capacity] does not adequately reflect moderate limitations in maintaining concentration, persistence, or pace." *Id.* at 5–6 (citing *Gaul v. Colvin*, No. 13-cv-163, 2013 WL 6179383 (D. Minn. Nov. 26, 2013). She asserts that the mental

limitations included in her residual functional capacity were just a "recitation of [the] requirements for unskilled work." *Id.* at 6. As a result, Plaintiff contends, the ALJ did not include adequate limitations in his formulation of her residual functional capacity. *Id.* at 9. Defendant responds that "simply because [the limitations in Plaintiff's residual functional capacity] align[] with limitations consistent with the performance of unskilled work" does not make the residual functional capacity deficient. Def's Br. at 8.

A claimant's residual functional capacity should articulate any deficiencies in concentration, persistence, and pace, rather than simply limiting a claimant to "simple jobs." *See Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (determining that a hypothetical question to a vocational expert was deficient because it simply limited a claimant to "simple jobs"). But even though a residual functional capacity that "omits the effects of concentration, persistence, or pace deficiencies that the ALJ has found is not sufficient," the ALJ's formulation of a claimant's residual functional capacity "need not contain much more than the [formulation] at issue in *Newton*" to be sufficient. *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017).

The ALJ found that Plaintiff had "a moderate limitation" in "concentrating, persisting, or maintaining pace." Tr. 20. Plaintiff's residual functional capacity states that "[s]he can understand, carry out, and remember simple instructions and use judgment as necessary to complete simple, routine, and repetitive tasks." Tr. 21. The Court determines that these limitations in Plaintiff's residual functional capacity adequately reflect the limitations that the ALJ found in Plaintiff's ability to concentrate, persist, and maintain pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (determining that an

7

"ALJ's hypothetical concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [appellant's] deficiencies in concentration, persistence or pace").

The Court rejects Plaintiff's argument that, because the limitations in Plaintiff's residual functional capacity align with the requirements for unskilled work, the ALJ functionally violated *Newton*'s requirement that the residual functional capacity include the limitations found by the ALJ rather than just limit the claimant to "simple jobs." Admittedly, Plaintiff's limitations—as formulated by the ALJ—do align with the requirements for unskilled work. *Compare* Tr. 21 ("She can understand, carry out, and remember simple instructions and use judgment as necessary to complete simple, routine, and repetitive tasks. She can adapt to and manage changes in a routine work setting . . . .") *with* SSR 85-15, *Titles II and XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."). But the ALJ did not just limit Plaintiff to "unskilled work;" rather, the ALJ laid out Plaintiff's limitations on a function-by-function basis. The fact that the limitations that the ALJ imposed aligned with the requirements on "unskilled work" does not violate the requirement of *Newton*. Accordingly, substantial evidence supports the ALJ's decision with respect to the Plaintiff's residual functional capacity to perform mental work.

### D. Substantial evidence supported the ALJ's decision to not include a marked limitation for detailed tasks in Plaintiff's residual functional capacity.

Plaintiff next argues that, even though the ALJ found psychologist Linda Berberoglu's medical opinion "somewhat persuasive, the ALJ failed to include Dr. Berberoglu's proposed marked limitation for detailed tasks in Plaintiff's residual functional capacity. ECF No. 14 at 9. Plaintiff further contends that Dr. Berberoglu's proposed limitations conflict with the jobs cited by the vocational expert. *Id.* at 10. Defendant responds that the ALJ included greater restrictions than Dr. Berberoglu proposed and that there is no conflict between the proposed restrictions and the jobs cited by the vocational expert. ECF No. 15 at 10–11.

The Social Security Administration has promulgated rules on how the ALJ considers medical opinions. The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ considers five factors in evaluating the medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. *Id.* 416.920c(c). The most important factors are supportability and consistency. *Id.* § 416.920c(b)(2). The ALJ must explain how they considered the supportability and consistency factors but is not required to explain how they considered the other three factors. *Id.*

For the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

9

opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). And for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Dr. Berberoglu opined that "[Plaintiff's] ability to carry out routine, repetitive and 3-4 step tasks with adequate persistence and pace would not be significantly limited, but would be markedly limited for detailed or complex/technical tasks." Tr. 104. The ALJ stated that this opinion was "somewhat persuasive" and that he "concur[red] the claimant has not more than moderate mental limitation and has provided for somewhat different/additional restriction to utilize vocational terms and better detail the claimant's abilities." Tr. 27. Specifically, the ALJ stated in Plaintiff's residual functional capacity:

> She can understand, carry out, and remember simple instructions and use judgment as necessary to complete simple, routine, and repetitive tasks. She can adapt to and manage changes in a routine work setting such as changes in processes and products that can be learned in a manner and time consistent with SVP-1 or SVP-2 work.

Tr. 21.

In short, the ALJ found Dr. Berberoglu's opinion only "somewhat persuasive" because the ALJ found that "additional restriction[s]" were appropriate. Tr. 27, 104. The ALJ then stated that Plaintiff was limited to performing "simple, routine, and repetitive tasks." Tr. 21. This is a greater restriction than Dr. Berberoglu's proposed limitations on Plaintiff's ability to perform "detailed or complex/technical tasks." Tr. 104. "An ALJ . . .

10

can carefully examine the medical evidence of record in making the determination to provide greater limitations than those opined by the state agency consultants." *David A. P. v. Kijakazi*, No. 20-cv-1586, 2022 WL 980302, at *15 (Mar. 31, 2022). As a result, the fact that the ALJ imposed greater restrictions than the medical opinions does not mean that the ALJ's decision was not supported by substantial evidence. Rather, the ALJ appropriately supported his reasons for finding Dr. Berberoglu's assessment "somewhat persuasive" based on "the mental status/psychiatric examinations of record and the [Plaintiff's] own reports of functioning." Tr. 27.

In addition, the jobs suggested by the vocational expert do not conflict with Plaintiff's residual functional capacity. According to the Dictionary of Occupational Titles, the professions of marker, collator, and router all require "Level 2" reasoning, defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Marker*, DICOT 209.587-034, 1991 WL 671802; *Collator*, DICOT 208.685-010, 1991 WL 671753; *Router*, DICOT 222.587-038, 1991 WL 672123.

Level two reasoning's requirement of applying only "commonsense understanding to carry out detailed but uninvolved . . . instructions" corresponds to the residual functional capacity's limitation stating that Plaintiff can "understand, carry out, and remember simple instructions." Tr. 21. And level two reasoning's requirement that an individual can "[d]eal with problems involving a few concrete variables in or from standardized situations" corresponds to the residual functional capacity's limitation of "simple, routine, and repetitive tasks." Tr. 21. Moreover, the reasoning levels provided in the Dictionary of

11

Occupational Titles "are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quotation omitted). In addition, precedent from the Eighth Circuit establishes that "[t]he failure to address any potential inconsistency between the [residual function capacity's] limitation to simple, routine, repetitive work and the [Dictionary of Occupational Title's] requirement of *level three* reasoning does not require a remand." *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (emphasis added). Level three reasoning is more complex than level two reasoning, so the ALJ's alleged failure to address any potential inconsistency between Plaintiff's limitation to simple, routine, repetitive work and level two reasoning also does not require a remand. Because there is no conflict between the limitations in Plaintiff's residual functional capacity and the requirements of level two reasoning, substantial evidence supported the ALJ's decision.

### E. Substantial evidence supports the ALJ's limitations on respiratory function in Plaintiff's residual functional capacity.

Plaintiff argues that the ALJ failed to include appropriate respiratory limitations in Plaintiff's residual functional capacity. ECF No. 14 at 10–11. Plaintiff asserts that the ALJ should have included further limitations based on a statement in a note written by a physician, Kelly Barnes, M.D. *Id.* Defendant responds that the ALJ adequately considered the entire record before crafting Plaintiff's residual functional capacity. ECF No. 15 at 11.

"[A]n ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quotation omitted). And "an ALJ's failure to

12

cite specific evidence does not indicate that such evidence was not considered." *Id.* (quotation omitted).

The ALJ wrote that Plaintiff "testified at the hearing she is easily out of breath. She averred her breathing worsens in cold weather. The claimant testified she uses a nebulizer a few times a day in addition to inhalers." Tr. 22; *see also* Tr. 43, 45–46 (testimony of Plaintiff at hearing). The ALJ reported that Plaintiff "estimated she could walk one block before experiencing shortness of breath." Tr. 22; *see also* Tr. 43 (testimony of Plaintiff at hearing).

Although the ALJ found that Plaintiff's medical conditions could cause those symptoms, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22–23. Specifically, the ALJ wrote that Plaintiff "was diagnosed with asthma as a child and then diagnosed with COPD as an adult in the setting of a long-time smoking history." Tr. 23. Despite Plaintiff's reports of being winded with exertion, the ALJ stated that "there are no pulmonary function tests of record and chest x-rays have shown relatively normal findings." *Id.* The ALJ noted that "[Plaintiff's] counsel cited a history of partial lung collapse and argued the claimant be reduced to sedentary work based on pulmonary problems alone." *Id.* The ALJ responded that "[t]his is not carried through the entire record, however, and there is no objective endorsement of sedentary based on the claimant's COPD or lung collapse. As such, the [ALJ] has addressed the claimant's respiratory impairments with the environmental limitations provided in the above residual functional capacity assessment." *Id.*

13

In Plaintiff's residual functional capacity, the ALJ provided that Plaintiff could "never work in humidity and wetness. She can work in dust, odors, fumes, and pulmonary irritants but indoor work must be well ventilated with HVAC controlled settings. She cannot perform indoor or outdoor work requiring direct exposure to concentrated sources of pulmonary irritants. She can never work in extreme cold." Tr. 21.

The ALJ's finding of Plaintiff's residual functional capacity as it relates to lung function is supported by the record.

Plaintiff first met with Dr. Barnes in 2021, reporting chest pain with shortness of breath. Tr. 776. Dr. Barnes wrote that the source of Plaintiff's shortness of breath was unclear, but that "certainly an element of poorly controlled COPD [with] ongoing smoking is contributory. A little anxiety is at play also." Tr. 778.

In January 2022, Dr. Barnes wrote in a treatment note that Plaintiff had a diaphragmatic eventration that prevented her from taking a full breath. Tr. 745. She noted that Plaintiff's results on pulmonary function tests that day were "actually normal, which [was] reassuring." *Id.* She stated that if Plaintiff's condition did not improve with additional exercise and reduced anxiety, she would refer Plaintiff to a pulmonologist. *Id.* In later notes, Dr. Barnes wrote that Plaintiff had ongoing shortness of breath since she began treating Plaintiff in 2021, but that Plaintiff's breathing had improved with medication. Tr. 717 (August 2022), 722 (June 2022).

The ALJ's finding of Plaintiff's residual functional capacity is supported by the fact that Plaintiff had normal lung function and her breath had improved with medication. The Court again notes that "the ALJ is not required to explicitly reconcile every conflicting

shred of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quotation omitted). More importantly, the fact that a different conclusion as to Plaintiff's residual functional capacity could be drawn from the evidence does not merit reversal. *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").

Overall, substantial evidence supports the ALJ's finding of Plaintiff's residual functional capacity. Reversal is not warranted based on the ALJ's finding of Plaintiff's residual functional capacity because it falls in the "zone of choice" created from the record. *Kraus*, 988 F.3d at 1024.

## IV.   CONCLUSION

Based upon the foregoing and all the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**;
2. Defendant's Request for Relief, ECF No. 15, is **GRANTED**; and
3. The ALJ's decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: March 20, 2025                     */s/ Tony N. Leung*
                                         Tony N. Leung
                                         United States Magistrate Judge
                                         District of Minnesota

                                         *Tina S. v. Dudek*
                                         Case No. 23-cv-3603 (TNL)